Good afternoon. Illinois Appellate Court First District Court is now in session the Sixth Division. The Honorable Justice Mary McPherson presiding. Case number 1-8-0-2-2-1 People vs. Roberta Oyeleki. Thank you. Could counsel please both state their names for the record and let us know which side you're arguing for beginning with the appellant. Good morning, Your Honor. Michael Orenstein with the State Appellate Defender representing defendant appellant Roberta Oyeleki. Yeah, how do you pronounce it? Oyeleki? And as a housekeeping matter, it's spelled O-Y-E-L-E-K-E. The caption was not right at some points in my brief. Oh, okay. All right. Thank you. O-Y-E-L-E-K-E. And counsel for the state. Good afternoon, Your Honor. Assistant State's Attorney Victoria Kennedy on behalf of the people of the state of Illinois. All right. As you both are probably well aware, you will have 20 minutes aside. Mr. Orenstein, would you like to reserve any of that for rebuttal? Yes. Five minutes, please. Okay. Whenever you're ready, Mr. Orenstein, please begin. Your Honor, to reverse my client's conviction, you need only review the testimony of the Corey Gowdy. Gowdy testified that in a parking lot, he forced Ricky Patterson to the ground. Then, quoting from the transcript, you were still dragging Mr. Patterson, right? Answer, and he deserved it. Question, and fighting him, right? Yes. Answer, yes. Trying to stop him some more, right? Oh, yes. Answer, oh, yes. Question, you did win the fight. Answer, yes, I did. Question, he was down on the ground. Answer, that's why he had his arm out reaching for his girlfriend's help. Now, defense of another has six elements, which I'll group into three categories. One, unlawful, dangerous force threatening imminent harm. Gowdy was stomping Patterson, stomping his force. It's unlawful, and it can harm. Two, the person defended is not the initial aggressor. The state does not argue this, and for good reason. The judge acquitted Patterson and Oylecki of initially battering Gowdy. And three, and I think most at issue here, the defendant must reasonably believe that her counterforce was necessary. My client testified that she had this belief, and under the undisputed evidence, anyone would have. Gowdy testified that he had won the fight. He testified that he continued to stop Patterson, and Gowdy testified that Patterson was reducing to reaching out for help. And see, Gowdy's stomping threatened, at the least, great bodily harm. Stomping can fracture a rib. Stomping can damage the brain. Stomping can damage the lungs. So, my client's fear and her reactions were reasonable. That is why this court should reverse her conviction. Mr. Orenstein, is it your argument that any time someone engages in what someone characterizes as, quote, stomping, end quote, there is imminent great bodily harm? Is that your position? Well, I wouldn't say at any time, Your Honor, because the term the statute uses is reasonable. And, of course, reasonable is a term that's well known in both criminal and civil law, in all facts and circumstances. So, let's say I was driving up, and I see someone stomping somebody. I can get out of the car. I'm at a safe distance. I'm not in great danger myself. I could, at first say, at least before using great bodily harm in response, I could say, I'm calling the police if you don't stop right now. That would be an example of a situation where you wouldn't need to. I think in this situation, where my client had already called the police and had already tried to pull Patterson away from Gowdy, that it was more than reasonable what she did. So, the answer is no, but I would say that in my situation, the answer is yes. I understand. I guess what I'm a little troubled by is I'm not sure what stomping means. It seems it could mean a variety of different things, like a child stomps their feet. They all use the word stomping, but it doesn't seem like a term of art, necessarily. I think the common meaning of stomping is directing your feet in a downward motion towards either the ground or towards something. I mean, I think you can distinguish them from kicking, which could be in any direction. I'm not quite sure how else to answer the question. Okay. Well, that was a good answer. Thanks. Mr. Ornstein, may I ask you, the state talks about the fact that there was not, oh, I'm sorry, Justice, did you want to go ahead? Judge Connors, proceed. Thank you. That there was not great bodily harm to the victim of the beating here. Is that something we take into consideration? I suppose it could be part of the circumstantial evidence, Your Honor, but I think in this case, it really doesn't make any difference because the standard is whether there's a reasonable fear of great bodily harm. And if you're stomping, it can easily create great bodily harm. And just because Patterson was lucky and that Gowdy hadn't hit a vital organ yet, doesn't mean it couldn't have happened with the very next blow. And one more question. Your client never testified that she was concerned there was going to be great bodily harm, did she? I don't know if she actually did it. I know she said she was worried about him. That's a good question. I don't know if she actually used those words. Thank you. Yeah, Mr. Ornstein, the circuit court in making its ruling described the scene as a as a man to man conflict and raised this stomping issue. It seems to me to distinguish this from a man to man conflict into your client trying to actively stop some sort of horrible one sided attack. Sure, Your Honor. So yeah, the words that the judge used, I think, were specifically that she uses her man to man. And she also used the term to regular fist fight. But by the time of the stabbing, which is the time it counts, this was not any kind of man to man fight or regular fist fights. One person had already won the fight and was continuing to aggress against the other. In a man to man fist fight, one party is not stomping the other with their feet. So that sort of shades into my second issue, if you don't mind me doing that, which is why would the judge say that? And I think most likely the judge misrecalled the facts. This trial spread over four weeks from August 17 to September 14. Most I think most likely, by the time of the ruling, the judge was recalled Gowdy's testimony. I'm now now that's now the state argues that the term regular fight was accurate, for regular fist fight was accurate, because it because the judge was addressing the event in its entirety. If that's true, I would argue that under people we Francis, the judge convicted my client under an incorrect theory of law, because even if it was a man to man fight beforehand, and that and that type of fighting did not justify deadly force. You look to the you look to the you look to the state of the what's going on at the time of the stabbing or the time of the occurrence. That's what people O'Neill says. At the time of the time of the occurrence, it was no longer a man to man fight. Certainly was before but not at that point. What about the use of a knife and intervention? Well, I think I think I think the law is that you can you if someone is being threatened with great bodily harm, and you and you and you and all and it's we it's reason and it's reasonable you can use great but you can use great bodily harm response. And I think I think it was reasonable here. I would know that she did not go for, you know, there's no evidence that she deadly weapon, why couldn't she jump between them? lay across the victim lay lay across his body? Well, I don't I mean, she did try to pull him away your honor, I will say I will say that and that was unsuccessful. She also she also called the police earlier. Could she have laid him across his body if if Gowdy had let him? I mean, Gowdy, I mean, consider this, this is this is this is one man fighting another man and and and beating him up. And and and you have a woman trying to intervene. I mean, it only requires reason substantially requires reasonable judgment, not perfect judgment. And I think it's far from clear. I mean, remember how out of control Gowdy was even after Gowdy was stabbed. He did not stop it. He kept on going. He said I paid her no mind. I think the idea that Gowdy would permit her to to get to support her body in between a is probably unlikely and B would require her quite possibly accepted beating and I don't know that the law requires that. The lesson to be learned might be you don't deny man is barbecue. Well, barbecue is that issue? I mean, and Gowdy was very upset about his barbecue and his cigarettes. There's no question about that. I think I think he was I think he was out of control. And I think that's that's sort of where this whole thing went. I mean, I would I might be upset, too, if unless there are other questions on those points. I'll touch very briefly on forfeiture. I would argue that the stage for state's forfeiture argument is the issue to ignores people be Mitchell. And for good reason, Mitchell is on all fours here. In Mitchell, the defendant alleged that the judge misrecalled facts. Also in Mitchell, counsel's closing argument had correctly recalled or argued the testimony issue. And then the judge misrecalled the crucial testimony and counsel did not contemporaneously object. Mitchell found no reason for contemporary contemporaneous pardon me objection, because the argument had already already been made. And we would urge this court to follow Mitchell. So unless there are any other questions, I guess this court either reverse my client's conviction or order a new trial. Any other questions from counsel? No, thank you. Alex. All right. Thank you. May it please the court, counsel, Assistant State's Attorney Victoria Kennedy, on behalf of the people of the state of Illinois. Your honors, while there is no question that stomping can cause death or great bodily harm. Defendants argument is that stomping will always risk death or great bodily harm. Therefore, any action or response automatically rises to self defense or defense of others. Defendant just said he's not asking for an absolute rule. However, the defendant really is. And that is not the law. It is for the trier of fact to view the totality of the surrounding circumstances, the probability or improbability of defendant's testimony and the testimony of the other witnesses, which is exactly what the trial court did here. Well, what about the fact that the trial court never mentioned stomping in his ruling and doesn't seem to recall that there was stopping talks about a fistfight, which is definitely what not what it was at the point of her intervention? Well, the trial court was looking to the facts. It was the trial court was relying on the evidence here and the court was analogizing the evidence to that of a fistfight of which he made a factual finding. What's important here is that in the context, the defendant is the one who introduced the weapon, which is what the court made abundantly clear. Well, but are you suggesting an absolute rule that any time you introduce a weapon, you cannot have the defense of self defense? No, no. You have to look at the facts and the circumstances of each case. And it is for the trial court to make the factual determination, which is what the trial court did based upon the evidence that was elicited at trial. And so can I ask you quickly about the stomping? I read the record. I thought fairly carefully and testimony was there were three stomps to the head, one to the neck and one to the face, arm and shoulder. That's what I have on my notes. Is that accurate? That I when I went through the record to his stomping, there were several remarks as to the facts and the circumstances of this case. The court found that this did not rise to the level of self defense based upon the fact there the court had to look at the fact that there was a weapon introduced and that the fact that Patterson did not receive any injuries in this matter. That the court in its ruling, in viewing the totality of the circumstances, the court found that the force the defendant used under these circumstances was definitely much too severe. So the court made a factual finding and its determination should not be disturbed upon review. However, there we believe that based upon the facts, the. One of the six necessary factors to establish defense of others was beyond a reasonable doubt was negated and that being the court's finding that the defendant's force was unreasonable. However, more than one factor was negated beyond a reasonable doubt as evinced by the trial court's ruling, where it pointedly addressed the testimony that Gowdy was beating and punching Patterson and grabbing him throughout the parking lot, after which the trial court made the factual finding that in this particular incident, both of the gentlemen are engaged in hand to hand combat. Neither party had any instruments. It was equal disparity of force. Logically, the trial court found that harm was not imminent and it was a factual question for the trier of fact and the evidence in the record clearly supports that and due consideration must be given to those findings. And nevertheless, defendant does take exception with the fact that the trial court did not specifically address the stomping. However, not all stompings cause death and the trial court did not believe that Patterson was at risk or of death or great bodily harm. Even though the trial court found that Patterson was definitely losing the fight, the trial court still found defendant's belief and actions to be unreasonable and the trier effect is not obligated to clarify. So the two elements you say were disproved by the state were that her belief was reasonable and that harm was imminent. Are those the two elements that you're suggesting were disproved? Definitely. And that's what the trial court found based upon its findings, its factual findings. Excuse me. I believe she stabbed him three times. Four times, your honor. Was that excessive under the circumstances? Was it exceptional? Excessive. Oh, definitely. It was excessive because in its ruling at the motion to reconsider, the trial court even gave alternatives that the defendant could have used. And I believe your honor even mentioned that the trial court indicated that you could have pushed Gowdy off of Patterson or punched him instead of stabbing. And so the stabbing, the introduction of the weapon to the fist fight was what was excessive and was what the trial court made a finding upon which found that the defense of others was not met. Do you find any inconsistency between the fact that the court found that Patterson using a hammer was self-defense but her using a knife was not? Well, the trial court in its ruling regarding Patterson, and I did not include that in the brief because Patterson is not part of this appeal. However, in that case, the trial court was very clear and was very clear that the trial court did not know where the fight occurred if your honor's report said, I don't know if it occurred inside the apartment or outside of the apartment. And the trial court then said, if Gowdy had grabbed the defendant, then that choking could have led to death. So the trial court made a distinction between that in the fact that the trial court then said, yes, the hammer would be reasonable. And in this manner, so it clearly shows that the court looked at the fact that a choke could lead to death. In this manner, the trial court did not make any such finding. The trial court said it's a fist fight. So that is the distinction. But it had gone beyond a fist fight by everybody's testimony to the stomping, whatever that meant. Well, the trial court did not find that it had gone beyond a fist fight. It was more of a colloquial statement in that it was a fist fight. The stomping is that is directly a determination to be made by the trial court. It's for the trial to determine what is a stomping and how far it went. And the trial court clearly made its decision that the defendant, it was the defendant who went too far with respect to the stabbing. And was there any medical testimony about the depth or the danger of these four, three or four stabs that were completed? Well, it interesting is that the Corey Gowdy attempted to state, they kept saying the location of a stab wound in the back, and the trial, the defense attorney objected, indicating that they would not allow Mr. Gowdy to testify as to the depth or the location of these injuries, perhaps based on the fact that he wasn't a medical professional. But the- Yeah, you could have had that testimony though, if you wanted to bring somebody in, right? Correct. However, the testimony regarding the significant stab wound to the arm, as Mr. Gowdy explained that when the officer Babbitt showed up, Gowdy looked at his arm and it was hanging as if it was gaping open is the word used. And that was very descriptive to show the extent of the injury. And the fact also remains that Mr. Gowdy received sutures with respect to each and every stab wound in the two in the arm, and then in the upper back and shoulder area, and then also in the back. I would like to, I believe it bears mentioning that, importantly, the defendant was acquitted on the two most serious counts, that being the armed robbery, which shows that the trial court listened intently to the evidence. Now, I believe it bears mentioning that in a reply brief with respect to imminent harm, the defendant cites people v. Speed and people v. Wood for the proposition that blood need not be drawn to invoke the self-defense. However, those cases are distinguishable and further support the trial court's findings of fact. In Speed, the defendant was found guilty of voluntary manslaughter where he shot and killed the victim who was armed with a wrench. Importantly, in Wood, the Supreme Court found in a beating death that it was revenge or retaliation, and it was not self-defense. And notably, in so finding, the Supreme Court stated, the self-defense concept is to protect person, not crime, which is exactly what the trial court found in this matter. Specifically, in addressing the claim of self-defense, the trial court stated that her self-defense claim is that Mr. Patterson's punishment during the fight is so severe that he feels the need to slash and stab Mr. Gowdy to prevent any harm or embarrassment to Mr. Patterson. As such, Wood is on point with the trial court. The trial court considered the and clearly the force that was used was excessive and unreasonable. This is not a case where the trial court's findings were so unreasonable, improbable, and unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. Now, with respect to the second issue, I touched upon it that the defendant is parsing out the trial court's words and giving more weight to this one statement in isolation rather than the ruling in its totality. The ruling as a whole reveals that the trial court did not fail to recall or consider the evidence that is crucial to the defense. Rather, the trial court analogized the evidence to that of a fistfight, and as I've said, of which it made a factual finding. In the review of the trial court's ruling in its entirety, the statement that the trial court found it to be a fistfight, it was analogizing this as bringing a weapon to a fistfight because Gowdy and Patterson were using their bodies, their bare hands, their feet, because Gowdy testified that Patterson was kicking him as well. So, it's not just Gowdy who was using his feet, and their bodies are not dangerous weapons. In context, the broad idea was that the trial court did not believe it was a literal fistfight, and this one comment is used out of context. I'll answer. Of course, here the defendant, Ms. Oyeleke. What's her name? Oyeleke. She's the defendant here, and under criminal law, they were always interested in intent, and her participation in this event. Would you examine the facts to be more persuasive that her a brutal pummeling of a person on the ground, or was it her intent to inflict damage to the, what's his name, Gowdy? Gowdy. Was it her intent to cause him physical harm? Well, in this matter, we have to look at the fact that it was for, she introduced the self-defense and we just have to see whether her belief was unreasonable. So, it's not the intent, it's to whether there are the six factors, and the trial court found that her belief was unreasonable, and furthermore, that harm was not imminent. And the fact with respect to the stomping, just prior to that, the record shows that Patterson was kicking Gowdy and was kicking him as he indicated in his privates or in his groin, and that's how Gowdy got a hold of his foot. So, it wasn't just a one-on-one, and in the end, yes, it stated that Gowdy was winning the fight of which the trial court also indicated that. However, the trial court still made a factual finding that her force was unreasonable, there were no weapons involved, and it was unreasonable and excessive. I understand your position. Thank you. He, defendant doesn't, simply put, does not agree with the trial court's factual finding calling it a fist fight. However, both Gowdy and Patterson were unarmed, and the defendant committed the aggravated battery upon which the trial court made its factual finding. Now, the trial court could have called it a stomping, the trial court could have called it a beating, but it did not. It deemed this to be a fist fight. Now, after considering all of the evidence, there's no affirmative evidence that it failed to consider all of the circumstances. In fact, the opposite is true. It did not fail to remember anything, especially the stomping, and as evinced by the record, the trial court was referring to the altercation as a fist fight, where Gowdy and Patterson were unarmed, and they hit and kicked one another. Patterson did not suffer any injury, and defendant interjected herself by stabbing Gowdy, which was a proper factual determination. For these reasons, and those stated in the people's brief, people ask this court to affirm defendant's conviction and sentence. Any other questions for counsel before we hear rebuttal? All right. Mr. Orenstein. Thank you. I think four points. First of all, I think counsel said twice, if I'm not misquoting her, that Patterson was also kicking Gowdy at the end of the fight, and I don't think that's quite accurate. On page 138 of the transcript, Gowdy testifies, yes, he was laying on the ground trying to kick me in my private area. I grabbed his foot, and he reached out to her for her help, and she grabbed his arm, so we're both pulling him. Well, I dragged him across the parking lot, and his shoe ended up coming off, so I don't think based on the testimony, you could say that Patterson was actually kicking Gowdy. All right, so that's the first point I wanted to make. Secondly, in terms of excessiveness, I would note, you got to consider, I don't think it's irrelevant that Gowdy is a man, and or like he is a woman, and certainly there are some women who are very strong and could beat up many men, but as a general rule, men have more upper body strength than women, and it's something you need to consider, and consider that she did try to pull Gowdy, pull Patterson off of Gowdy. And lastly, as to excessiveness, you should consider that the first time she stabbed him, he didn't stop. The second time she stabbed him, he didn't stop. The third time she stabbed him, he didn't stop. The fourth time, he may or may not have. It's not exactly sure when he stopped, but I think it was pretty clear that the lesser means, he didn't even notice, he didn't even feel it. The lesser means, we're not going to get in his way. The third point is very brief. The state argued that my client introduced a weapon. I would argue that Gowdy introduced a weapon because it was his weapon. And finally, on a couple levels, I think there was one question, perhaps from Justice Harris, about exactly what my client said, about her intent, and then there was a statement talked about, my client just wanted to avoid embarrassment or pride. So, the closest thing I can get to the answer to your question is on page 317 of the record. My client was asked, and what did you observe happening between Ms. Gowdy and Mr. Patterson? Answer, he was beating Rick so bad. He was dragging him, stomping him, hitting him, just doing everything. He was dragging him all on the floor. Question, what did you think? What was going through your mind when you saw this? Answer, what was going through my head? I felt he needs my help. I got to help him. Question, who needs your help? Answer, Rick. Question, and why do you think he needed your help? Answer, because Corey was stomping him, hitting him, all in the face, dragging him, all kinds of stuff. So, I think there's no question that this involved more than pride. So, if there's any other questions, unless there are any other questions, I would ask that this court either reverse the conviction or remand for a new trial. Counsel, quick question. Were you referring to the trial judge as she? In which point? I'm sorry. During your argument today. I'm sorry. Was it Carol Boyd? Was that the trial judge? Yeah, I think so. Yeah. Yeah. Okay, fine. I thought you said she. That's fine, counsel. I may have about two different arguments I'm preparing for. Fine, thank you. So, yeah. So, we request a relief, and thank you, your honors. Anything else? Thank you, counsel. We will take this under advisement, and you will hear from us in due course. Thank you both very much.